UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 25-230 (JRT/DJF)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S POSITION** |
| vs. | ) | **ON SENTENCING** |
| | ) | |
| ISABEL LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Isabel Lopez, through undersigned counsel, hereby submits this memorandum to address issues related to her upcoming sentencing. The plea agreement between the parties involves a plea of guilty to a single misdemeanor charge to a violation of 18 U.S.C. § 111. The felony charges in the Indictment will be dismissed. The parties jointly recommend a non-custodial sentence and no more than one year of probation. Ms. Lopez urges the Court to follow the recommendation of a non-custodial sentence, while imposing a period of probation of no more than three months[1]. Ms. Lopez has been fully compliant with the conditions of her pretrial release for more than one year and presents no concerns to the safety of the community.  Based on the circumstances of the offense and Ms. Lopez's exemplary background which includes no prior criminal history, no further sanctions are warranted.

---

[1]   Undersigned counsel was informed by the probation officer that she may recommend a period of location monitoring. This is completely unnecessary.

## I.     FACTUAL BACKGROUND

Isabel Lopez is 28 years old, was born in Chicago and has lived in St. Paul since she was an infant. She is the daughter of Mexican immigrants with indigenous backgrounds. She grew up in a community of Mexican immigrants, and has been involved in social activism throughout her teenage and adult life. Ms. Lopez works as a community organizer, and her biggest passion is poetry which she often performs at community events. The defense is submitting summaries of interviews by a private investigator of multiple people who know Ms. Lopez well from working with her going to school with her, or participating in community activity.  The defense further provides letters from numerous community members at the outset of these proceedings in support of Ms. Lopez's release from custody which also describe her character. Everyone describes a young woman who makes friends and is supportive of all those around her, and who is deeply committed to a better world.

Always of deep concern to Ms. Lopez is the mistreatment of immigrants. She grew up seeing people in her community get deported, and experienced the fear and harm that both deportation and the threat of deportation caused. Ms. Lopez's life experiences drove her response to events on June 3, 2025. That afternoon there was a large contingency of law enforcement officers deployed to the area of Bloomington and Lake Street in south Minneapolis.

The government claims that the officers were present in relation to the execution of a search warrant relating to narcotics and human trafficking. Community members present in the area observed that multiple officers had "ICE" imprinted on their clothing. In light of the ongoing statements from the Trump administration about plans to conduct mass deportations, and large-scale deportation operations conducted in other cities, community members concluded that the government was carrying deportations in the south Minneapolis neighborhood that was in the heart of the Twin Cities immigrant community.[2]

In response to the reports of the presence of ICE officers, hundreds of people gathered in the area in protest of the federal presence and in support of immigrants who may have been arrested as a result of the operation. The law enforcement response to the crowed was to call for help from more law enforcement officers, and in many instances to aggressively and physically respond to the civilians gathered in the area. The defense submits summaries interviews with multiple witnesses who were present during the operation who observed officers physically pushing people, shoving some to the ground, and generally approaching observers or protesters in a hostile and intimidating manner.

Ms. Lopez was among those who responded to reports of the presence of ICE agents by going to location. She observed the aggressive and assaultive actions of law

---

[2] Even after being informed of the government's explanation of the operation, many community members nevertheless object to the presence of ICE officers in Minneapolis which has declared itself to be a sanctuary City and where there is overwhelming support for the immigrant population.

enforcement officers, and responded by physically confronting them. She admits to

striking an FBI SWAT officer and at some point kicking him. No one was injured. A

short time later when Ms. Lopez observed more aggressive actions towards protestors,

she responded by throwing a softball towards one of the officers involved. She missed

him.  As Ms. Lopez was standing on top of a garbage can observing and yelling at

officers, officer violently removed Ms. Lopez, tackled her and pinned her on the ground.

  

## II.    APPLICABLE § 3553(a) FACTORS WARRANT A SENTENCE BELOW THE ADVISORY SENTENCING GUIDELINES.

Although the advisory sentencing guidelines recommend 8-11 months

incarceration, the circumstances of the offense and Ms. Lopez's characteristics strongly

support the parties' joint recommendation of no incarceration or other time in custody. A

downward variance is consistent with the applicable "reasonableness" factors set forth in

18 U.S.C. § 3553(a).  18 U.S.C. § 3553(a) provides that "The court shall impose a sentence sufficient, <u>but not greater than necessary</u>, to comply with the purposes set forth in paragraph (2) of this subsection."  After calculating the guidelines, a district court "may not presume that the Guidelines range is reasonable" but must make an independent assessment of the 18 U.S.C. § 3553(a) factors based on the individual facts of the case. <u>Gall v. United States</u>, 128 S.Ct. 586, 597 (2007).

Section 3553(a) sets forth the following factors that must be considered by a sentencing court in imposing every sentence:

(1)    *the nature and circumstances of the offense and the history and characteristics of the defendant;*

The offense was committed in response to a tense situation where Ms. Lopez and others were concerned about the threats by the federal government to their immigrant neighbors. This tension was exacerbated by law enforcement's hostile and aggressive response to protestors. Even though it the law enforcement operation in this incident does not appear to have been exactly what community members feared, the subsequent "Operation Metro Surge" where 3000-4000 federal agents were deployed to Minnesota to conduct as many deportations and engaged in numerous and severe abuses of people's rights vindicated community members fears of what the federal government had in store. No one was hurt as a result of Ms. Lopez's conduct. Further she did not present any serious danger of harming anyone. Ms. Lopez is 5'2" and slightly built. The officers or

agents that she encountered were all very large. Ms. Lopez's actions were not of any magnitude that placed anyone in serious danger.

Ms. Lopez has no prior criminal record. (Bond Report, Doc. 15 at 3). She has had no problems with the law or in any other aspect of her conduct during the more than a year has elapsed since the incident. Ms. Lopez finished high school, has completed four years of college and is eight credits short of a bachelor's degree. (Bond Report, Doc. 15 at 2). The extensive letters and statements from friends and colleagues establish that Ms. Lopez is a highly respected, appreciated and contributing member of the community. She devotes herself to the good of the community through her jobs, organizing and artistic work.

The combination of the offense conduct which was an isolated incident that did not cause significant harm, and Ms. Lopez's exemplary personal background support a minimal sentence.

 (2) the need for the sentence imposed–

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

As discussed above, the offense was not highly serious. Ms. Lopez, who had no previous encounters with the criminal justice system, was highly traumatized by being arrested, jailed for a couple of days, and having to endure a felony prosecution for a year. (The charge was recently reduced to a misdemeanor). Ms. Lopez's experience to date constitutes sufficient punishment and deterrence from criminal conduct. She does not present any danger to the public. Any programming that the Court were to deem appropriate could be best arranged in the community.

(3)     *the kinds of sentences available;*

A sentence involving incarceration is not required. Ms. Lopez can be given probation, or a sentence of time-served with no probation.

(4)     *the kinds of sentence and the sentencing range established for–*

    (A)     *the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .*

See above.

(5)     *any pertinent policy statement under the Sentencing Guidelines*

No policy statements are known that are specifically pertinent to this case.

(6)     *the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and*

Approximately 20 people arrested during "Operation Metro Surge" who were accused of comparable conduct had their charges dismissed. All with similar conduct had

their charges reduced to misdemeanors. Many have been offered diversionary dispositions, and others have been offered no jail time.

*(7)     the need to provide restitution to any victims of the offense.*

There does not appear to be any claim for restitution.  No tangible harm was caused.

**CONCLUSION**

For the foregoing reasons, Ms. Lopez respectfully requests that the Court follow the joint recommendation of custodial time, and decline the government's request for one year of probation but instead impose a probationary period of 0-3 months.

Dated:  June 18, 2026                          LAW OFFICE OF JORDAN S. KUSHNER

By s/Jordan S. Kushner
Jordan S. Kushner, ID 219307
Attorney for Defendant
431 South 7th Street, Suite 2446
Minneapolis, Minnesota  55415
(612) 288-0545
jskushner@gmail.com